O

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MELVIN BUCHANAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2889 |
| | § | |
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #17). Having considered the motion, the response, and the applicable law, the Court is of the opinion that the motion should be GRANTED.

### Factual and Procedural Background

Plaintiff, Melvin Buchanan, an African-American, began working for Defendant, ExxonMobil, in 1967 in its Baytown Refinery in the Baytown Overland Shipping Section ("BOSS"). Plaintiff began disability leave after October 13, 2003, returning to work for one day in 2004, and officially retiring effective September 30, 2004. From approximately 1982 until October 2003, Plaintiff was a first line supervisor ("FLS") in the BOSS unit. In October 2003, Defendant reorganized the BOSS unit, and apparently sought to outsource its functions. At that time, two of the seven FLS positions in the BOSS unit were to be eliminated. Because one of the FLS's, Mike Daniello, announced his plans to retire, it was only necessary to eliminate one of the FLS positions. Defendant maintains that Plaintiff's position was eliminated because he was the lowest ranked FLS in BOSS at that time. As a result, Plaintiff was demoted to the position of Process Technician.

After the 2003 reduction, Defendant sought to reduce two more of the five remaining FLS positions in 2004. Because another FLS, Don Garnett, announced his retirement, only one FLS position

would have to be eliminated again. According to Defendant, Catherine Malonson, an African American female, was the lowest ranked FLS at that time, and therefore, her position was eliminated. Malonson was apparently transferred to another position in the Refinery Lab.

Under Defendant's annual evaluation and ranking system, each immediate supervisor would prepare an evaluation on her direct subordinates that included, among other things, notes, performance discussions, the employee's comments, and feedback from other employees. Afterwards, groups of supervisors within each department held conferences to rank the employees. These ranking groups included certain second line supervisors ("SLSs") and the department head, who facilitated the conference.[1] The result of this process is a list of employees ranked in order of the value of their performance within their respective ranking group. During the time Plaintiff was an FLS, it is undisputed that he ranked in the bottom 10% of his unit despite having six different SLSs between 1989 and October 2003.[2] The individuals who either ranked the FLSs in BOSS or who provided information that was used for the rankings in 2003 were SLS Randy Prince, and the Department Head, Erskine Frison, an African American male.

Plaintiff filed a charge of age discrimination with the EEOC on December 8, 2003, and a charge of race discrimination with the EEOC on June 25, 2004. Both charges were dismissed. Thereafter,

---

[1]Although there was some initial disagreement as to whether a human resources official was present during the 2003 ranking, it appears it is now undisputed that a human resources representative was available, though not present, to resolve issues or answer any questions. *See* Dkt. #31, Ex. 2, p. 30. Moreover, Plaintiff does not dispute that Defendant's assertion that a human resource official reviewed the list in order to assess the factors like racial disparity.

[2]Plaintiff's supervisors during this time were as follows:

| | | |
|---|---|---|
| Randy Prince | (2000-2003) | (white male) |
| Peter Njenga | (1999-2000) | (African American male) |
| David Knutson | (1996-1999) | (white male) |
| Ray McNulty | (1995-1996) | (white male) |
| Bob Blundell | (1993-1995) | (white male) |
| Ray Cardinal | (1989-1993) | (white male) |

2

Plaintiff filed Plaintiff commenced this lawsuit on July 16, 2004 alleging employment discrimination on the basis of age and race in violation of the Age Discrimination in Employment Act ("ADEA"),  29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and 42 U.S.C. § 1981.  In particular, Plaintiff alleges that various SLSs treated non-African Americans more favorably, directed racial animus towards him, unjustifiably ranked him in the bottom 10%, threatened him with termination for alleged performance deficiencies, regularly inquired about his retirement plans, and unfairly disciplined him.  Additionally, Plaintiff contends that he was demoted as a result of the discrimination.

Defendant filed its Motion for Summary Judgment on April 29, 2005 arguing that each of Plaintiff's claims fail as a matter of law.  After receiving an extension of the submission date from the Court, Plaintiff responded to the motion on June 24, 2005, to which Defendant filed a reply.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving

3

party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Discussion

Defendant seeks summary judgment on each claim asserted by Plaintiff. Specifically, Defendant

maintains that Plaintiff has presented nothing more to support his claims of age and race discrimination than his own subjective beliefs, which are insufficient to withstand summary judgment. The Court will address each issue below.

**I.      ADEA**

The ADEA, as amended, makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S .C. § 623(a). Plaintiff asserts disparate treatment and hostile work environment claims under the ADEA. With respect to Plaintiff's ADEA hostile work environment claim, the Court notes that neither the United States Supreme Court nor the Fifth Circuit has recognized a hostile work environment claim under the ADEA. The Fifth Circuit, as well as several district courts within this circuit, however, have assumed that such a cause of action exists.[3] *See McNealy v. Emerson Elec. Co.*, 121 Fed. Appx. 29, 34 & n.1 (5th Cir. 2005) (assuming, without deciding, that the ADEA allows for a hostile environment claim); *Steele v. Atrium Cos., Inc.*, No. 3:01cv1125, 2002 WL 31059823, at *5 (N.D. Tex. 2002) (assuming that a hostile environment claim under the ADEA exists after looking to other circuits' precedent). Therefore, this Court will also assume that a hostile environment claim under the ADEA is available to Plaintiff, provided that he is able to establish the necessary elements.

---

[3]Several other circuits have either specifically recognized a hostile work environment claim under the ADEA or assumed that such a claim existed. *See Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) (addressing merits of claim); *Burns v. AAF-McQuay, Inc*., 166 F.3d 292, 294 (4th Cir. 1999) (assuming, without deciding, that hostile work environment claims are cognizable under the ADEA); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (stating that "we find it a relatively uncontroversial proposition that such a theory is viable under the ADEA"); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1248-49 & n. 7 (11th Cir. 1997) (addressing merits of ADEA hostile work environment claim but not deciding whether such a claim is cognizable).

### A.        Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must prove that: (1) he is in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his status as a member of the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.  *See McNealy*, 121 Fed. Appx. at 34 (citing *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001)).  The Supreme Court has explained that harassment affects a term or condition of employment when it is so severe that it alters the conditions of the victim's employment and creates an abusive working environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

The general rule is that a plaintiff must file a charge with the EEOC within, at most, 300 days of an alleged unlawful employment practice.  *See* 29 U.S.C. § 626(d); *see also Tyler v. Union Oil Co.*, 304 F.3d 379, 384 (5th Cir. 2002).  One exception to this rule, however, is "the continuing violation theory, [which] relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period."  *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002).  This "doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation."  *Id.*  And, the doctrine "'requires the same type of discriminatory acts to occur both inside and outside the limitations period,' such that a valid connection exists between them."  *Id.* (quoting *Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000)).

In this case, Plaintiff identifies several examples of conduct that allegedly occurred within the relevant statutory time period that he maintains establish a hostile work environment: (1) his demotion in October 2003; (2) unjustifiable rankings and evaluations; (3) repeated inquiries about his retirement plans; and (4) disparities in pay.  Of the alleged conduct cited by Plaintiff, only retirement inquiries and

6

unjustifiable rankings and evaluations represent the type of serial behavior and conduct contemplated by a hostile work environment claim. The remaining allegations are more appropriately characterized as ultimate employment decisions and discrete acts, and as such, are more suited for a traditional discrimination or disparate treatment claim. *See Felton*, 315 F.3d at 485 (refusing to consider ultimate employment decisions for hostile work environment claims where conduct was more appropriately considered in disparate treatment context); *see also Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997) (noting that hiring, granting leave, discharging, promoting, and compensating represented the type of ultimate employment actions contemplated by statute).

Furthermore, the Court concludes the inquiries about retirement plans and unjustified rankings and evaluations do not constitute conduct legally sufficient to sustain Plaintiff's claim. Even assuming the Defendant questioned Plaintiff about his retirement plans, Plaintiff has not alleged and no evidence suggests that Defendant did so in a threatening or harassing manner. While such questioning could serve in certain circumstances as evidence to support some other alleged discriminatory conduct, inquiries about future retirement dates "every so often" do not amount to a hostile work environment. In particular, no evidence suggests that the inquiries were calculated to encourage Plaintiff's retirement;[4] rather, the information was sought during performance reviews for the stated purpose of allowing Defendant to make staffing decisions. Similarly, the evidence suggests that Plaintiff had been consistently evaluated and ranked low within his FLS group, even years during which Plaintiff has not alleged discrimination. In light of the consistency of his poor rankings from 1989 until his demotion, the Court cannot conclude that this suffices as the type of harassing and threatening conduct necessary to maintain this claim. In short, the complained-of conduct, absent any age-related intimidation, ridicule, or insults, simply does not constitute a hostile work environment. *See Felton*, 315 F.3d at 485.

---

[4] For example, there is no indication that Plaintiff was told that (1) he "*needed* to retire" or that "he *should* retire before he gets fired."

7

As such, this claim fails as a matter of law.

### B.     Disparate Treatment

Plaintiff also asserts a disparate treatment claim on the basis of age. In order to demonstrate a prima facie case of traditional age discrimination a plaintiff must show that (1) he suffered an adverse employment action; (2) he was qualified for the position; (3) he was within the protected class at the time of the employment decision at issue; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discriminated against because of his age. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003)).  Where, as here, a plaintiff seeks to establish their case with circumstantial evidence of discriminatory animus, the plaintiff must negotiate the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Following the United States Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Fifth Circuit announced a modified *McDonnell Douglas* burden-shifting approach:

> [T]he plaintiff must . . . demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).  If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.[5]

*Rachid*, 376 F.3d at 312.  In its motion, Defendant asserts that Plaintiff (1) cannot establish a prima facie case of age discrimination; (2) it has proffered a legitimate, non-discriminatory reason for any alleged employment action; and (3) Plaintiff cannot demonstrate that this legitimate, non-discriminatory reason

---

[5] (internal citations and quotations omitted)

is pretextual or that age was otherwise a motivating factor in the employment decision.

>    **1.**    **Prima Facie Case**

The summary judgment evidence indicates that the only ultimate employment decision that occurred within the limitations period was Plaintiff's demotion.[6] Plaintiff also asserts that he was constructively discharged because the demotion forced him to retire.[7] When an employee resigns, he may satisfy the discharge requirement by proving constructive discharge. *See Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). To prove constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. *Id.* That is, Plaintiff's resignation must have been reasonable under all the circumstances. *Id*. Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but a court may consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . . *Id*.

In this case, Defendant demoted Plaintiff from his long held FLS position to a process technician position. It appears undisputed that this demotion from a salaried position to an hourly position resulted

---

[6]The Court notes that the demotion resulted in decreased compensation for Plaintiff. As to Plaintiff's claims of disparities in disciplinary actions, the summary judgment record does not reflect that any of the disciplinary actions occurred within the limitations period. Furthermore, that any of these disciplinary actions represent age related discrimination appears to be only the subjective belief of Plaintiff, and not supported by any evidence of discriminatory animus or evidence of any appropriate comparators.

[7]Defendant objects to Plaintiff's argument regarding constructive discharge because the amended complaint did not specify that Plaintiff would rely on this theory. The Court concludes, however, that Plaintiff's allegations of discrimination on the basis of age, which included all of the conduct offered to support his constructive discharge theory, would fairly place Defendant on notice of this contention.

in a decrease in the amount of Plaintiff's compensation, as well as his overall job responsibilities. Moreover, the new position apparently involved more physical labor than Plaintiff had endured as a FLS. Although the circumstances surrounding Plaintiff's demotion certainly were not outrageous, the Court is mindful that "to establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985). The Court accordingly assumes *arguendo* that a reasonable person in Plaintiff's position could have felt compelled to resign.

Having shown adverse employment actions—a demotion and a constructive discharge—Plaintiff must also show that he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discriminated against because of his age. *Rachid*, 376 F.3d at 309. Here, although Plaintiff suggests that he was replaced by someone younger,[8] the evidence indicates that Defendant did not, in fact, replace Plaintiff with anyone. Rather, Plaintiff's position was eliminated as a part of the BOSS reorganization. However, for the purpose of establishing a prima facie case, there is some indication that Plaintiff was otherwise discriminated because of his age. First, despite the fact that questions about retirement plans were not of such nature as to support a hostile work environment claim, the inquiries, absent any other explanation, might allow a fact finder to infer that Defendant wanted Plaintiff to retire. As such, the demotion could be viewed as an attempt to force Plaintiff's retirement. Finally, the Court notes that the FLSs that remained after Plaintiff's demotion, while in the same protected class, were apparently all younger than Plaintiff.

### 2. Fact Issues Regarding Defendant's Reasons

---

[8]Plaintiff appears to suggest that he was replaced by David Richey. Plaintiff makes this assertion "upon information and belief." First, the stated basis for such an assertion is not competent summary judgment evidence. *See Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 n.79 (5th Cir. 2001) (noting that "statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion"). Second, Plaintiff's information and belief is directly undermined by other testimony, as well as Plaintiff's own description of an earlier incident where Richey "was the FLS in charge . . . when [the] incident occurred."

In articulating its legitimate, non-discriminatory reason for its decision to demote Plaintiff. Defendant explains that the demotion resulted from a reorganization of the BOSS unit. As part of this reorganization, Defendant eliminated two of the seven FLS positions in 2003 and two more of the remaining five positions in 2004. Defendant maintains that because one FLS, Mike Daniello, retired, it was only necessary to eliminate one position. Because Plaintiff was the lowest ranked FLS in the BOSS unit, Defendant asserts his position was eliminated and he was demoted to the process technician position. The Court finds that this serves as a legitimate, non-discriminatory reason for the decision. Thus, Plaintiff must offer sufficient evidence to create a genuine issue of material fact either (1) that Defendant's reason is not true, but is instead a pretext for discrimination, or (2) that Defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's protected characteristic.

The Court concludes that Plaintiff has not met his burden of creating a fact issue regarding whether his demotion resulted from age discrimination. Plaintiff essentially relies on two facts in attempting to survive summary judgment on this issue: (1) Defendant questioned him regarding his future retirement plans, and (2) he was the oldest FLS at the time Defendant demoted him. Standing alone, these might reasonably suggest that Plaintiff's age played a role in Defendant's employment decision; however, these facts appear against a backdrop of other circumstances that make it clear that Plaintiff's demotion resulted from a combination of his poor work performance and Defendant's business decision to eliminate the FLS positions in the BOSS unit.

Plaintiff has no evidence to suggest that his poor work performance and subsequent low ranking resulted from age related animus. In contrast, the evidence indicates that Plaintiff had been repeatedly ranked in the lowest group of FLSs for many years under six different supervisors.[9] Despite this consistently poor performance ranking, Plaintiff remained in his position until Defendant decided to

---

[9] The evidence indicates that his bottom 10% ranking apparently extended to as early as 1989.

11

eliminate it and others like it in favor of outsourcing the BOSS unit functions—a permissible business decision on the part of Defendant. In addition to eliminating Plaintiff's position, Defendant eliminated the position of the retiring Mike Daniello, who, although in the protected class, was still younger than Plaintiff. Moreover, as Plaintiff notes in support of his other claims, in the following year Defendant eliminated the FLS positions occupied by Don Garnett, who announced his retirement, and Catherine Malonson,[10] who was one of the youngest FLSs remaining in the BOSS unit.[11] Despite the fact that Malonson was perhaps the youngest FLS remaining in the BOSS unit, her position was eliminated because, after Plaintiff's demotion and the other FLS retirements, she represented the lowest ranked FLS. In view of these other circumstances, the Court finds that no reasonable fact finder could conclude that Defendant's decision to demote Plaintiff was motivated by his age. Thus, summary judgment is appropriate.

## II.     Title VII & Section 1981 Discrimination

In addition to age discrimination, Plaintiff also alleges discrimination on the basis of race in violation of Title VII and Section 1981. Title VII makes it unlawful for a employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 grants all persons within the jurisdiction of the United States equal rights to "make and enforce contracts," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). Because the same facts underlie both of Plaintiff's racial discrimination claims, the Court will consider the two claims jointly where appropriate.[12]

---

[10] Malonson was subsequently transferred at her request to the Refinery Lab.

[11] The evidence indicates that Malonson was born in 1956, while the FLSs remaining after her demotion were born in 1949, 1950, and 1951.

[12] As with the ADEA claim, Title VII claims must normally be brought within 300 days of the alleged discriminatory employment action. *See* 42 U.S.C.2000e-5(e)(1)(2003); *Byers v.*

12

**A.     Hostile Work Environment**

As the Court discussed above, to establish a hostile work environment claim, a plaintiff must prove that: (1) he is in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his status as a member of the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *See McNealy*, 121 Fed. Appx. at 34 (citing *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001)). The Supreme Court has explained that harassment affects a term or condition of employment when it is so severe that it alters the conditions of the victim's employment and creates an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Furthermore, in determining whether the alleged harassment affected a term, condition or privilege of employment, the Court considers the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) the severity of the challenged conduct; (3) whether the mistreatment was physically threatening or humiliating, or merely an offensive comment; and (4) whether the alleged harassment unreasonably interfered with the employee's work performance. *See Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

In this case, Plaintiff relies on the following to support his claim: (1) he was repeatedly ranked in the bottom 10% of his group while working under white SLSs, which resulted in his receiving lower pay and ultimately his demotion; (2) he heard his white SLS, who is no longer working for Defendant to Plaintiff's knowledge, direct a racial slur toward him in 1990; (3) white SLSs gave white FLSs better assignments; (4) he suffered a number of disciplinary actions that were "ridiculous at best" at the hands of white SLSs; and (5) he was demoted while other white FLSs were not. Notwithstanding the fact that many of these alleged incidents represent discrete acts falling well outside the applicable limitations

---

*Dallas Morning News*, 209 F.3d 419, 424 (5th Cir. 2000). With Plaintiff's § 1981 claim, however, the limitations period is four years. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372 (2004).

period,[13] the Court finds that Plaintiff has not met his burden.

First, Plaintiff's poor performance ranking was consistent and spanned the course of approximately fifteen years under six SLSs. Of these six SLSs, Plaintiff states that two of the five white male SLSs who supervised him did not discriminate against him; yet his ranking during that time remained consistently low. Moreover, Plaintiff indicated that he had "no idea" whether an African American SLS discriminated against him, but his ranking remained low during that period. In short, Plaintiff has simply not demonstrated with any evidence that his ranking resulted from racially motivated animus.

Furthermore, the Court concludes that Plaintiff's alleged one-time experience of an SLS directing a racial slur toward him in 1990 is not probative of discrimination over a decade later. Even if were not so far removed, the Fifth Circuit has been clear that such conduct, while certainly reprehensible, will not suffice to establish a hostile work environment claim. *See Moore v. United Parcel Serv., Inc.*, 150 Fed. Appx. 315, 319 (5th Cir. 2005) (holding that several racial slurs by supervisors was insufficient to create a hostile work environment); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (A "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII"); *see also Patel v. Midland Hosp. and Med. Ctr.*, 298 F.3d 333, 343-44 (5th Cir. 2002) (finding several racist comments made by decision makers two years before adverse action were insufficient to establish discrimination). Additionally, although Plaintiff alleges that white FLSs were given better assignments, Plaintiff does not point to any evidence to support this contention other than his own deposition testimony.

---

[13] As with the hostile work environment claim discussed in the ADEA context, the continuing violation theory applies in certain circumstances as long as "the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002). Here, because the collective evidence presented by Plaintiff does not constitute the type of harassing environment necessary to maintain this claim, the Court will assume that Plaintiff's evidence represents a series of related acts rather than parse out the conduct that does not qualify.

Although the timing of the incidents is not entirely clear from his response, Plaintiff also cites two disciplinary actions as examples of the discrimination resulting in hostile work environment. Assuming that the alleged incidents occurred as Plaintiff contends, they do not assist Plaintiff in establishing his case. The first problem is that Plaintiff has not made clear why the "discipline" was unfair.[14] That is, Plaintiff and Defendant's description of the conduct is relatively similar; yet Plaintiff describes the conduct as discriminatory while Defendant defends its written warnings to Plaintiff on the basis of following company policies. Without more, the Court sees nothing that would suggest discriminatory motive. Even if some discriminatory motive were present, however, two isolated examples of selective discipline resulting in written warnings would not constitute the type of hostile work environment necessary to maintain such a claim.

Finally, the Court concludes that Plaintiff's demotion is also insufficient to support this claim. As the Court noted earlier, discrete acts that are ultimate employment decisions are more appropriately considered in traditional or disparate treatment discrimination claims. *See Felton*, 315 F.3d at 485. Although a demotion might affect term, condition or privilege of employment, it is a one-time event and does not represent the harassment contemplated by these types of claims. In sum, the acts alleged by Plaintiff in support of his hostile work environment claims do not support a prima facie case under Title VII or § 1981. Plaintiff relies on only a handful of specific incidents of alleged race-based harassment in a career spanning many years. The purported harassment is simply not sufficiently severe to affect a term, condition, or privilege of employment such as to "[destroy] a protected class member's opportunity to succeed in the workplace." *See Hockman v. Westward Commc'ns*, LLC, 407 F.3d 317, 326 (5th Cir. 2004). Consequently, Plaintiff is unable to raise a genuine issue of material fact in support of the fourth prong of a prima facie case of hostile work environment, and summary judgment is warranted on this claim.

**B.   Disparate Treatment**

---

[14] Although the incidents apparently resulted in written warnings, Plaintiff points to no other actual discipline that occurred as a result.

Regarding the disparate treatment claim, Plaintiff may establish a prima facie case by showing that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) . . . that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). Assuming that Plaintiff was able to establish this prima facie case, he must still demonstrate a fact issue regarding (1) whether Defendant's legitimate, non-discriminatory reason is a pretext or (2) whether race was otherwise a motivating factor in the adverse employment decision. Because the Court finds that Plaintiff cannot meet this burden, it will not address all aspects of Plaintiff's prima facie case.

Plaintiff appears to rely on the same evidence, alleged facts, incidents, and conduct to support his disparate treatment claim. Of course, as the Fifth Circuit has explained, proof of an adverse employment action is a requisite element of a plaintiff's prima facie case of discrimination under both Title VII and § 1981. The Fifth Circuit has further explained that an adverse employment action means an ultimate employment decision, such as hiring, granting leave, discharging, promoting and compensating. *See Foley v. University of Houston System*, 355 F.3d 333, 340 (5th Cir. 2003); *see also Washington v. Veneman*, 109 Fed. Appx. 685, 689 (5th Cir. 2004) (noting that, among other things, reprimanding, rude behavior from supervisors, undeserved poor performance ratings, denying a performance award, threatening disciplinary action, denying adequate work assignments did not represent ultimate employment actions). In this case, there is only one ultimate employment decision for the Court to consider, and that is Plaintiff's demotion.[15]

Although Plaintiff suffered an adverse employment action in being demoted, the summary

---

[15] For purposes of the Court's consideration, it makes no difference whether the circumstances regarding Plaintiff's eventual retirement would constitute a constructive discharge. That is, Plaintiff's demotion, as with a possible constructive discharge, are both adverse employment actions for which the underlying analysis would focus on the motivations behind the demotion leading to the retirement.

judgment evidence does not reflect a genuine issue of material fact as to the reason behind the demotion. Defendant explains that the BOSS reorganization included outsourcing the unit's functions, which required the elimination of the BOSS unit FLS positions. Plaintiff does not dispute that Defendant sought to reorganize the unit, or that Defendant intended to eliminate the FLS positions. Additionally, Plaintiff does not address the fact that FLS positions of individuals outside his protected class were also eliminated at the same time as Plaintiff's demotion. The fact that these individuals opted to retire in lieu of accepting a demotion does not diminish their probative value as comparators. That is, the Court finds that, absent any additional evidence, no reasonable fact finder could conclude that discriminatory animus motivated Defendant's decision to eliminate Plaintiff's position when similar decisions were made regarding Caucasian males in the BOSS unit at or around the same time. Moreover, Defendant contends that Plaintiff suffered the employment action at the time he did as a result of his low ranking. As noted above, Plaintiff's low rankings extended well beyond the tenure of one SLS, and even included SLSs about which Plaintiff has no complaints. In view of all these circumstances, the Court concludes that summary judgment is warranted on this claim as well.

## Conclusion

For the reasons above, Defendant's Motion for Summary Judgment is hereby GRANTED.

It is so ORDERED.

Signed this 1st day of March, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE